MOSES STATIONERY COMPANY, LIMITED, *v.* T. SHINDO, DOING BUSINESS UNDER THE NAME OF T. SHINDO STORE, DEFENDANT, BISHOP FIRST NATIONAL BANK OF HONOLULU, GARNISHEE.

No. 2085.

ARGUED MARCH 30, 1933.                    DECIDED APRIL 13, 1933.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY PERRY, C. J.

This is an action of assumpsit in which the plaintiff claims the sum of $2,410 as an unpaid balance due upon

the purchase price of "one Green-Vosgier 50 gallon ice cream freezer" sold by the plaintiff to the defendant. The case was tried before a jury. Against the objection of the defendant, the presiding judge instructed the jury to render a verdict for the plaintiff in the amount claimed and a verdict was rendered in accordance with the instruction. The case comes to this court upon 107 exceptions to rulings upon the admission and the rejection of evidence and the giving and the refusal of instructions.

In many different ways the defendant at the trial sought, by cross-examination of the plaintiff's witnesses and by direct examination of his own witnesses, to elicit evidence tending to show the following: that the defendant was in the business of manufacturing and selling ice cream; that he wished to purchase a machine not only for the making and freezing of ice cream but for the making of ice cream in a stated time and for the freezing of it in a stated time; that he made known to the plaintiff, the seller, this particular purpose; that he, the defendant, relied entirely upon the skill and judgment of the seller as to whether the machine to be furnished would accomplish that particular purpose; that the machine, for the price of which the action was brought, was chosen and furnished by the plaintiff for the particular purposes required by the defendant; that upon repeated trials the machine that was furnished did not and could not accomplish those purposes and that the defendant informed the plaintiff of that failure and offered to return the machine to him and claimed a return of the installments that had been paid. The plaintiff also made all requisite offers to prove the facts just recited.

The contention of the plaintiff is that the purchase was of a specified article under its patent or other tradename and that therefore there is no implied warranty as to its fitness for any particular purpose, although it was

instrumental in securing rulings excluding all evidence which might show that the machine was not bought under its trade-name but was bought in ignorance of what it could accomplish and in full reliance upon the particular knowledge and skill of the seller as to the sufficiency of the machine for the purposes desired. It is also contended by the plaintiff that to admit the evidence offered by the defendant would be to vary or add to a written contract by parol and that under the rules of evidence this cannot be permitted. The defendant on the other hand relies upon the provisions of subsection 1 of section 15 of the Uniform Sales Act under which a warranty is implied by law under the circumstances there stated.

The rules laid down in *Hurd-Pohlmann Co., Ltd.*, v. *Sugita, ante* 577, 589, are clearly applicable in the case at bar. It was there held that "under the provisions of the Uniform Sales Act (L. 1929, Act 189, § 15), when the buyer expressly or by implication makes known to the seller the particular purpose for which a machine is required and it appears that the buyer relies upon the seller's skill and judgment, there is an implied warranty that the machine is reasonably fit for such purpose," and this may be so "even though the machine is described in the transaction by its patent or trade-name;" and that "it is only when the buyer relies upon his own judgment as to the suitability of the machine which bears the patent or other trade-name and orders it by that name that subsection 4 of section 15 applies." Concerning the admissibility of parol evidence in such a case as this the following was said in the *Hurd-Pohlmann* case: "The contention of the appellant that parol evidence was inadmissible to explain the terms of the contract or order for the Dutchess Divider cannot be sustained in view of the express provision of the statute (Uniform Sales Act, § 15, subsec. 1) that when the circumstances specified occur 'there is an

implied warranty' that the goods shall be reasonably fit for the purpose for which they were bought. The provision presupposes that the buyer makes known to the seller, *before the contract is finally entered into,* the particular purpose for which the goods are required and similarly that it is before the contract is signed that the buyer relies upon the seller's skill or judgment in coming to the conclusion that it would be to his interest to buy the seller's article. Under these circumstances the necessary inference is that the legislature intended that parol evidence should be admissible to prove the existence or the non-existence of these two circumstances." It is only fair to say that at the time of the trial of the case at bar the decision in the *Hurd-Pohlmann* case had not been rendered.

Much reliance is placed by the plaintiff upon the contention that parol evidence which was offered by the defendant was inadmissible because its effect would be to vary and to add to the terms of the written contract relating to the sale and the purchase of the machine and it is suggested that there was error in the *Hurd-Pohlmann* case in this respect. Upon a reexamination of the subject we think that this contention cannot be sustained and that the fundamental principles applicable are not uncertain. The general rule undoubtedly is that parol testimony is not admissible to vary or add to the terms of a written contract. There are, however, some qualifications of this rule; and in a case of a contract for the sale of a machine which is complete and contains within itself a statement of the warranties which the seller makes, parol evidence of other or different warranties is not admissible. When, however, as in the case at bar, the parties have not by the terms of their contract expressly excluded the implication (of a warranty) which the law declares shall arise from the circumstances stated in subsection 1 of section 15 of

the Uniform Sales Act, that implication is imposed by law whether the parties contemplated such a warranty or not. In other words, the warranty of fitness for a particular purpose, arising under the circumstances stated in subsection 1, is not implied as a part of the contract of the parties but is imposed by law irrespective of the contract of the parties. The parol evidence rule seeks to prohibit the addition of terms to a contract as parts of the contract which the parties made. Subsection 1 on the other hand does not seek to state in any way what the contract of the parties is but does declare that when the circumstances there stated exist the seller must suffer the implied warranty to follow and the purchaser must get the benefit of the implied warranty. That warranty is thus implied by law for the sake of furthering honesty and fair dealing by sellers of machines and other articles and for the sake of preventing the possibility of sellers reaping benefits from dishonesty and unfair dealing. When a purchaser makes known to a seller the particular purpose for which he desires a machine and, knowing nothing of the ability of a machine to accomplish that particular purpose, relies upon the skill and judgment of the seller to choose and furnish a machine which will accomplish those particular purposes, these facts are known to the seller and the latter actually does the choosing of the machine, it would be utterly unfair, if the machine furnished is not able to accomplish the particular purposes, to permit the seller to recover the unpaid balance of the purchase price or to retain any of the purchase price. If this rule results in more moderate claims by sellers as to the ability of their machines it will result also in the assumption of greater responsibility by the buyer in deciding to purchase or not to purchase any particular machine and no injustice will have been done under those circumstances in compelling the purchaser to

pay for the machine which he bought at his own risk.

These views are well supported by competent authority. Mr. Williston in his work on Sales, Vol. 1, p. 417, says: "The basis of the parol evidence rule is that it must be assumed that when parties contracted in regard to a certain matter and reduced their agreement to writing, the writing expressed their whole agreement in regard to that matter. This reason is obviously inapplicable to a situation where an obligation is imposed by law irrespective of any intention to contract. Such is frequently the case with warranties."

"But while the fact that the contract was in writing may thus exclude oral warranties * * * and while the fact that an express warranty, in many cases, excludes an implied one * * * the mere fact that a contract of sale was in writing does not, of itself, exclude the implied warranties which the law raises in contracts of that sort. As said in a late case, 'the obligation attached to an executory contract for the sale of goods by the manufacturer or maker cannot be changed by the mere fact that the contract has been reduced to writing. The writing, it is true, is deemed to express the whole agreement of the parties; but since this peculiar liability arises from the nature of the transaction and the relation of the parties, without express words or even actual intention, it will remain as part of the seller's obligation unless in some way expressly excluded. All implied warranties, therefore, from their nature, may attach to a written as well as an unwritten contract of sale. The parties may, of course, so contract with each other as to eliminate this obligation from the transaction entirely. The seller may by express and unequivocal words exclude it, and, in like manner, the buyer may waive it. So, also, the parties may provide for a delivery or inspection of the article when made, which will operate to extinguish the liability upon

acceptance.' " 2 Mechem on Sales, § 1258.

"Such an implied warranty of the fitness of an article sold, under such circumstances, for the purpose for which it is to .be used, is superseded by an express warranty covering the same matter only if inconsistent therewith. * * * If there be an inconsistent express warranty that covers only a part of the matters covered by an implied warranty, the purchaser may avail himself of as much of the implied warranty as is not covered by such express warranty. It is only when an implied warranty is inconsistent with an express provision of the contract that all implied warranties are merged in, or superseded by, the express provisions of the contract. In other words, warranties are not implied in conflict with the express terms of the contract. It has always been competent for the parties to put their entire agreement in writing and to expressly stipulate that no obligation arising out of an oral agreement, imposition of law, or otherwise, shall rest upon either, save as defined by their written agreement. If the parties wish to avoid the implied warranty, they must, in form or in substance, contract against it. An implied warranty is not one of the contractual elements of an agreement. It is not one of the essential elements to be stated in the contract, nor does its application or effective existence rest or depend upon the affirmative intention of the parties. It is a child of the law. Because of the acts of the parties, it is imposed by the law. It arises independently and outside of the contract. The law annexes it to the contract. It writes it, by implication, into the contract which the parties have made. Its origin and use are to promote high standards in business and to discourage sharp dealings. It rests upon the principle that 'honesty is the best policy,' and it contemplates business transactions in which both parties may profit. Defendants' claim does not commend

itself to us as consistent with the honesty of purpose with which they are entitled to be credited in their dealings with their customers. The doctrine of implied warranty should be extended rather than restricted." *Bekkevold* v. *Potts,* 173 Minn. 87, 59 A. L. R. 1164, 1165.

After all, this is nothing more than the legislature itself has expressly and clearly stated in the Uniform Sales Act. It provides in subsection 6 of section 15 that "an express warranty * * * does not negative a warranty * * * implied under this Act unless inconsistent therewith," —which also means that if the express warranty is inconsistent there is no implied warranty. In other words, the statute leaves it open to the parties to expressly agree, each with the other, that the warranty implied by law shall not exist in their case; but it does say with equal clearness that when the parties do not thus waive this provision the implication of a warranty of fitness for a particular purpose does exist, not as a part of the contract but because the law so ordains.

The case of *Seitz* v. *Brewers' Refrigerating Co.,* 141 U. S. 510, 517, 519, is not an authority to the contrary. The order there was for a "No. 2 size refrigerating machine, *as constructed by the said party of the first part.*" The court said that "the written contract was in all respects unambiguous and definite. The machine which the company sold and which Seitz bought was a No. 2 size refrigerating machine *as constructed by the company"* (italics ours), "and was the machine which was delivered, put up and operated in the brewery." It went on to say: "In the case at bar the machine purchased was specifically designated in the contract, and the machine so designated was delivered, put up and put in operation in the brewery. The only implication in regard to it was that it would perform the work the described machine was made to do, and it is not contended that there was any failure in

such performance.

"This is not the case of an alleged defect in the process of manufacture known to the vendor but not to the purchaser, *nor of presumptive and justifiable reliance by the buyer on the judgment of the vendor rather than his own,* but of a purchase of a specific article, manufactured for a particular use, and fit, proper and efficacious for that use, but in respect to the operation of which, in producing a desired result under particular circumstances, the buyer found himself disappointed." It further stated: "In short, there was no express warranty that the machine would cool 150,000 cubic feet of atmosphere to 40° Fahrenheit, or any other temperature, without reference to the construction of the particular brewery or other surrounding circumstances, and, if there were no actual warranty, none could be imputed." This statement was undoubtedly made with reference to the facts of the case then before the court, the main distinguishing fact being that it was a case where the buyer did not rely upon the knowledge and skill of the seller. "The alleged antecedent representations," the court said, "as to whether the machine possessed sufficient refrigerating power to cool this brewery, were no more than expressions of opinion, confessedly honestly entertained, and dependent upon other elements than the machine itself, concerning which plaintiff in error could form an opinion as well as defendant." The court in that case also relied upon the fact that after the contract was signed the purchaser asked for a guarantee that the machine would cool the building to 40° Fahrenheit and that the request was refused and the purchaser acquiesced in the seller's refusal. The case, it seems to us, is easily distinguishable from that at bar, and that, too, irrespective of the fact that the Uniform Sales Act was not then in existence and therefore its provisions were not considered by the court.

While the reliance of a defendant in such a case as this is upon the warranty implied by law, evidence is nevertheless admissible of oral statements by the seller amounting to a warranty because it is evidence tending to show knowledge by the seller of the requirements of the purchaser and the reliance of the purchaser upon the knowledge and skill of the seller.

In the case at bar the defendant should have been permitted to adduce any and all evidence which had a tendency to show the existence of the circumstances mentioned in subsection 1 of section 15 of the Uniform Sales Act. The proof which he offered should have been admitted. It was error to instruct the jury to render a verdict for the plaintiff and to debar the defendant from an opportunity of presenting to the jury, with evidence and argument, his claims concerning the existence of the circumstances mentioned in subsection 1.

The exceptions are sustained, the verdict is set aside and a new trial is granted.

*H. Irwin* (also on the brief) for plaintiff.

*P. Silver* (*D. E. Metzger* on the briefs) for defendant.