WILLIAM STIBAL AND ANOTHER v. FIRST NATIONAL
BANK OF FOLEY AND ANOTHER.[1]

November 3, 1933.

No. 29,411.

[1]Reported in 250 N. W. 718.

2

[redacted]

*J. B. Pattison* and *E. W. Swenson,* for appellant.

*R. B. Brower* and *J. B. Himsl,* for respondents.

*LORING, Justice.*

In a suit to set aside and cancel a note and mortgage, the plaintiffs prevailed, and the defendant bank appeals from an order denying a new trial.

In October, 1927, and for several years previous thereto, plaintiffs possessed and occupied as their homestead in the village of Foley a half-acre tract of land. The original purchase price of the property had been paid by the plaintiff Celestine Stibal out of money belonging to her, but the title to the property was taken in the name of her husband, William Stibal. Since its purchase it has at all times been occupied as the homestead of the plaintiffs.

William Stibal was engaged in business in Foley and for several years previous to October, 1927, was indebted to the defendant bank in various amounts which he had borrowed for his business. October 3, 1927, Stibal owed the bank $2,141. Celestine Stibal was not in any manner obligated for the payment of this sum.

The Stibal note had been criticized by the federal bank examiners, and the bank was anxious to have it paid, reduced, or secured. Stibal attempted to secure a loan from Joseph Svihel, one of the defendants, and intended to mortgage the homestead as security for the loan. Svihel seemed willing to make a loan of $2,500, and accordingly a representative of the bank drew up a mortgage on the homestead and a note to be secured thereby, and both were signed by Stibal and his wife, though the mortgage was not acknowledged by her. The note and mortgage ran to Svihel

and were taken to the bank to be turned over to Svihel upon his payment of the $2,500 called for by the note and mortgage. A few days later Svihel refused to make the loan. The bank had set up on its books the note and mortgage as its own property and had the mortgage recorded. Sometime thereafter the bank procured from Svihel an assignment to it of the mortgage and an indorsement of the note. The assignment was recorded November 28, 1930, and on the same day the bank instituted foreclosure proceedings. Plaintiffs commenced this action to cancel the note and mortgage and annul the foreclosure proceedings. The defendant Svihel did not answer, and the bank is hereinafter referred to as defendant.

The case was tried to the court without a jury, and the court found the facts substantially as above set forth.

■ The court found that there had been no delivery of the mortgage from the Stibals to the mortgagee, Svihel. We think the evidence requires this conclusion. The mortgage was, in effect, placed in escrow with the bank, and delivery was subject to the condition that Svihel advance the consideration therefor to the plaintiff. No modification of that condition is shown. Even had there been a manual delivery of the documents (which is not shown by the evidence), the delivery would have been ineffectual. We said in the recent case of Merchants & F. State Bank v. Olson, 189 Minn. 528, 532, 250 N. W. 366, 368:

"Where an instrument placed in escrow is delivered by the escrow holder either in violation of or without compliance with the terms or conditions of the escrow agreement, no title passes by virtue of such delivery, because in legal contemplation it is not effectual delivery and the grantee thereunder obtains no more right than he would have in the possession of a forged or stolen instrument."

It necessarily follows that Svihel, having received nothing, could convey nothing by his subsequent indorsement and assignment of the note and mortgage to the bank.

■ An attempt is made to show that Stibal paid interest on the mortgage and in effect is estopped to question its delivery, but he

claims that the interest he paid was on his individual unsecured note. The court was justified in taking the view that he was not estopped.

We think the case at bar comes squarely within the rule announced by this court in Tomlinson v. Kandiyohi County Bank, 162 Minn. 230, 234, 202 N. W. 494, 495. In that case the surviving wife brought suit for relief similar to that here sought. This court said:

"If the wife has been wrongfully induced by fraud or deception to sign a release or conveyance of their homestead rights, either by her husband or by a third party, she is entitled, in a court of equity, to have such a conveyance set aside and to be restored to her rights. * * * It is elementary that delivery is essential to the validity of a deed or mortgage. It is the final act which consummates the execution of the instrument. It is as necessary as the seal or signature of the grantor and, without it, all other formalities are ineffectual. The trial court found that the mortgage was never delivered. The finding is clearly justified by the evidence. Pettis v. McLarne, 135 Minn. 269, 160 N. W. 691. Such being the facts, the instrument, sought to be foreclosed, is not the contract of the plaintiff and the property covered thereby, being plaintiff's homestead, the instrument is void under the statute and she is entitled to have the conveyance canceled of record and to be restored to her rights."

The plaintiffs on the record before us are entitled to the relief accorded them by the trial court.

■ Evidence of a conversation between husband and wife was admitted over defendant's objection. The plaintiffs claim it was part of the *res gestae*. Unfortunately the tenor of the conversation is not pointed out to us. The motion for a new trial is not in the record. If error, it was harmless, because no other conclusion could be reached on this record than that the mortgage and note to Svihel were never delivered to him and that they were placed in the bank for that purpose on condition that he lend to plaintiffs the sum of $2,500.

The order is affirmed.